IN THE UNITED STATES DISTRICT COURT FOR THE
THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CATHY JOANN PARIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-16-363-SM |
| ) | |
| CAROLYN W. COLVIN, acting ) | |
| Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Cathy Joann Paris (Plaintiff) brings this action for judicial review of the Defendant Acting Commissioner of Social Security's (Commissioner) final decision that she was not "disabled" under the terms of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented under 28 U.S.C. § 636(c) to proceed before a United States Magistrate Judge. Doc. 13. Following a careful review of the parties' briefs, the administrative record (AR), and the relevant authority, the court reverses and remands the Commissioner's decision.

## I.   Administrative determination.

### A.   Disability standard.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just h[er] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

**B.     Burden of proof.**

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in h[er] prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

**C.     Relevant findings.**

**1.     Administrative Law Judge (ALJ) findings.**

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis and concluded Plaintiff had not met her burden of proof. AR 14; *see* 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th

Cir. 2009) (describing the five-step process). Specifically, the ALJ found

Plaintiff:

(1) was severely impaired by "hearing loss; degenerative joint disease of bilateral knees; and hip pain," AR 21[1];

(2) had the residual functional capacity (RFC)[2] "to perform sedentary work . . . with some limitations," *id.* at 22; and

(3) had "acquired work skills from past relevant work" and could perform representative occupations including data entry clerk, check cashier, and sorter, all of which exist in significant numbers in the national economy. *Id.* at 28.

### 2. Appeals Council action.

The Social Security Administration's (SSA) Appeals Council found no

reason to review that decision, so the ALJ's decision is the Commissioner's

final decision in this case. *Id.* at 4-8; s*ee Krauser v. Astrue*, 638 F.3d 1324,

1327 (10th Cir. 2011).

## II.    Judicial review of the Commissioner's final decision.

### A.    Review standards.

A court reviews the Commissioner's final "decision to determine

whether the factual findings are supported by substantial evidence and

whether the correct legal standards were applied." *Mays v. Colvin*, 739 F.3d

---

[1]    Unless otherwise indicated, quotations are verbatim.

[2]    Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

569, 571 (10th Cir. 2014) (internal quotation marks omitted).  Substantial

evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489

F.3d at 1084.  A decision is not based on substantial evidence "if it is

overwhelmed by other evidence in the record."  *Wall*, 561 F.3d at 1052

(internal quotation marks omitted).  The court will "neither reweigh the

evidence nor substitute [its] judgment for that of the agency."  *Newbold v.*

*Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (internal quotation marks and

citation omitted).

> **B.    Plaintiff's claims of error.**

Under "Points of Error," Plaintiff lists two: (1) "[t]he ALJ erred, as a

matter of law, by failing to properly evaluate [Plaintiff's] purported

transferable skills under the relevant heightened standard" and (2) "[t]he

ALJ's findings regarding [Plaintiff's] transferable skills are not supported by

substantial evidence."  Doc. 17, at 2, 13, 16.  The court addresses the claims

together.

> **C.    Whether the ALJ legally erred in her evaluation of**
> **transferable skills and whether her findings were**
> **supported by substantial evidence.**

At step five of the sequential evaluation, the ALJ must determine

whether a claimant can perform other work available in the national

economy, considering the claimant's RFC, age, education, and past work

4

experience. *Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001). The burden of proof is on the ALJ, not the claimant, to develop the vocational evidence. *Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir. 1993).

At the time of the ALJ's decision, Plaintiff was fifty-five years old, possessed a high-school education (with attendance of special education classes), and had worked as an inventory clerk, a medium semiskilled job, SVP 4. *Id.* at 27. The ALJ found Plaintiff could not perform her past relevant work, as she is limited to sedentary work. *Id.*; *see* 20 C.F.R., Pt. 404, Subpt. P, App. 2, § 201.00(d).

As the Commissioner points out, where, like Plaintiff, a claimant is over age 55, is limited to sedentary work, and has transferable skills to sedentary occupations, "there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings or the industry." SSR 82-41, 1982 WL 31389, at *5 (1982); *see* Doc. 21, at 5-6; *Webster v. Barnhart*, 187 F. App'x 857, 859-60 (10th Cir. 2006) ("[T]he ALJ's decision here [where claimant was 56 years old at the time of the ALJ's decision] cannot be upheld unless he appropriately put the burden on the Commissioner to establish not only that Webster had skills that she could transfer to the two jobs identified, but that the two jobs were so similar to her

past work that she could be expected to perform them at a high degree of proficiency with minimal job orientation."").

"[U]nskilled jobs do not suffice to meet the Commissioner's burden of production at step five . . ." in such an instance. Doc. 21, at 5. "When a finding is made that a claimant has transferable skills, the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the State agency's determination or ALJ's decision." SSR 82-41, 1982 WL 31389, at *7.

The ALJ questioned Plaintiff regarding her past work history:

Q       What did you do there [in 2000]?

. . . .

A       I was an auditor. I counted lots of different stuff - - grocery store, hardware stores; have to pick up things - -

Q       So you're doing inventory?

A       Yes ma'am.

AR 40-41. The ALJ then confirmed Plaintiff's work encompassed the same duties from 2000 through her November 1, 2011 alleged onset date. *Id*. at 41-42.

The vocational expert (VE) examined Plaintiff's past work history as generally and actually performed. *Id*. at 59-60. He testified her work was as

an inventory/auditor type position, consistent with the Dictionary of Occupational Titles (DOT) position 222.[3]87-026. *Id.* at 60.

During the ALJ's continued questioning of the VE, the ALJ noted difficulties in hearing him and understanding his testimony. The ALJ inquired about Plaintiff's transferable work skills, but getting a straight answer proved difficult:

Q    All right. I'm having a hard time understanding you. So that's why I keep asking questions.

   All right then. In connection with her past work, does the claimant have transferrable work skills?

A    The skills that she basically has --

Q    Okay. Is that yes or no?

A    Oh. It's basically no, it's lateral.

Q    Okay. I can't understand you. Does the claimant have transferrable work skills?

A    Only lateral.

Q    Okay. It's a yes or no question. Does the claimant have --

A    No. No.

Q    -- transferrable work skills?

A    No.

Q    All right. Please don't talk when I'm talking. Everything's being recorded. I can't understand what you're saying.

   All right. Now then. please – there are no transferrable work skills.

A    Correct.

Q    Okay.  Earlier you said that there were but they were lateral.
     That's not my question.

A    That is --

Q    My question is are there transferrable work skills?

A    Okay.  I think what happens is there's a delay.     That's why I
     didn't know I was talking over you.

     But when I say transferrable skills, I am saying, basically, she
     does have skills as far as being able to record information --

Q    Okay.   Mr. Johnson, you're getting off track.

A    Okay.

Q    All I want you to do is answer my question within the -- within all
     the rules and regulations and case law regarding this application
     for disability.

     Now, my question is:  Does she have transferrable work skills?

A    I would say yes.

Q    Now, then here's my next question: Identify the precise exact
     skills.

A    Okay.  Thank you.

     All right.     Those skills that I'm looking at is her ability to
     record -- identify and record information, such as quantities, the
     type of item, and to -- like I said, again, to record information.
     That is the skills that I -- I have identified.

Q    Okay.  Since she's reached the age of 55, do they transfer with
     very little or no vocational adjustment to sedentary work for the
     time period of age 55 and beyond?

A    I would say yes.

*Id.* at 60-62.

Unquestionably, this colloquy (among others) involved considerable confusion, and required the ALJ to ask and re-urge questions regarding transferable skills. *See also id.* at 64 (ALJ correcting the VE: "It's not a transferable-skill job within the concept of transferable-skill work. It's unskilled work to begin with."); *id.* at 65-66 (ALJ to the VE: "I'm concerned that you don't understand my questions."; "Do you understand what transferable work skills are Mr. Johnson?"; "You're not making any sense."). When the ALJ first inquired as to whether Plaintiff has "transferrable work skills," the VE responded "it's basically no, it's lateral." *Id.* at 60. Not understanding, the ALJ inquired again whether Plaintiff has "transferrable work skills," and the VE responded "Only lateral." *Id.* When asked again, and instructed "It's a yes or no question," the VE responded "No" three times. *Id.* at 60-61. After some back and forth, the ALJ asked again, and the VE responded, "I would say yes." *Id.* at 61-62.

When the ALJ instructed the VE to "[i]dentify the precise exact skills," the VE responded "Those skills that I'm looking at is her ability to record -- identify and record information . . . ." *Id.* at 62. When asked if these skills would "transfer with very little or no vocational adjustment to sedentary

work for the time period of age 55 and beyond," the VE stated "I would say yes." *Id.*

The Commissioner argues Plaintiff places form over substance. Doc. 21, at 6-7. She contends Plaintiff seeks an exact methodology and order to the ALJ's questioning of the VE. *Id.* at 7-8. While the court agrees a precise order and verbiage are not required, the questioning and findings must be adequate to meet the Commissioner's burden to prove the existence of other work in significant numbers that Plaintiff can perform. *See Jensen v. Barnhart*, 436 F.3d 1163, 1168 (10th Cir. 2005) ("[T]he ALJ *carefully led the VE through the regulatory requirements* for transferability of skills for a person of advanced age.") (emphasis added).

The ALJ recapped her understanding of the VE's testimony:

> Q    You've -- I'm going to recite what you said. I asked you to -- I asked you the question, does the claimant have transferrable work skills; your answer was yes. I asked you to specific identify the specific skills, and you did. I asked you if they transfer with very little or no vocational adjustment to sedentary work since the claimant has reached the age of 55; your answer was yes. I then posed a hypothetical. I'm asking you, in response to the hypothetical, are there other jobs in the U.S. and regional economies and would you please identify any transferrable work skill jobs as part of your response to my question to the hypothetical.
>
> Now we're all sitting here waiting on you.

AR 66-67.

After considerable confusion, the VE identified three jobs each with a light exertional level, despite Plaintiff's having "changed ages." *Id.* at 67-69. The ALJ altered the hypothetical and the VE identified three sedentary jobs with transferable skills. *Id.* at 69-70 (identifying jobs of data entry clerk, check cashier, and sorter). As to the similarity of the jobs, the VE only stated that the position of check cashier "is semi-skilled, just like her former position was . . . ." *Id.* at 70.

First, although the ALJ's question to the VE regarding the overarching vocational adjustment included the appropriate boiler plate language, that "little or no vocational adjustment" would be required, *id.* at 66, the court finds no meaningful discussion in terms of comparing the tools, processes, settings, or the industry of Plaintiff's past relevant work and the other jobs the VE identified. *See* SSR 82-41, 1982 WL 31389, at *7; 20 C.F.R. § 404.1568(d)(2) ("Transferability is most probable and meaningful among jobs in which – (i) The same or a lesser degree of skill is required; (ii) The same or similar tools and machines are used; and (iii) The same or similar raw materials, products, processes, or services are involved."); *Jensen*, 463 F.3d at 1166-67 (affirming the ALJ's reliance on the VE's opinion where VE testified there would be "little if any vocational adjustment in terms of work processes, work settings, or tools," where the ALJ "solicited information from both the

VE and [plaintiff] about the characteristics of [plaintiff's] former jobs" and the VE testified as to "compatib[ility]" of skills between previous work and the "new jobs identified"). The ALJ's concern over the VE's understanding of transferability only bolsters the need for a more detailed inquiry. *See Webster*, 187 F. App'x at 861 (holding "the VE's testimony itself fails to support the ALJ's findings [because t]he VE's testimony about vocational adjustment was both minimal and circular").

Next, Plaintiff "has a good work history," working steadily in the same field for the same employer, with minor exceptions, through 2011. AR 40-44; 25-26; 159. She attained her skills to identify and record information through this employment. *Id.* at 61-62. But the Commissioner does not argue Plaintiff's past relevant work was in fact similar to the jobs of data entry clerk, check cashier, and sorter. *See* Doc. 22, at 5 n.3 (noting this "is not surprising given that the former job's worker functions, work field codes, and materials, products, subject matter, and services . . . codes all differed from [those three jobs] under the DOT"); *see also Jensen*, 463 F.3d at 1167.

Third, the ALJ did not inquire and made no specific findings regarding the vocational adjustment involved in transferring Plaintiff's skills to the three jobs of data entry clerk, check cashier, or sorter. AR 28, 69-70. She stated broadly that the VE testified Plaintiff could perform these occupations

as she had acquired skills "in her past relevant work" and these occupations required "no additional skills." *Id.* at 28; *see Jensen*, 463 F.3d at 1166-67; *Johnson v. Barnhart*, No. CIV-04-1328-T, Doc. 21, at 9, 8 (W.D. Okla. Oct. 14, 2005) (unpublished report and recommendation) (rejecting plaintiff's argument regarding adequacy of VE's testimony and ALJ's finding where "the record reflects that the VE described with adequate specificity the skills which Plaintiff acquired in her previous nursing jobs that would be transferable to other jobs at the sedentary level" and where the ALJ made an "implicit finding that Plaintiff has acquired the transferable skills identified by the VE" where "Plaintiff's attorney questioned the VE concerning a comparison between the work processes, work settings, tools, and industry between her past work" and the VE testified specifically to each job identified); *adopted*, Doc. 25 (W.D. Okla. Jan. 23, 2006) (unpublished order); *cf. Huhn v. Astrue*, No. 508-CV-16-OC-GRJ, 2009 WL 804646, at \*17 (M.D. Fla. Mar. 26, 2009) (unpublished order) (affirming ALJ's finding Plaintiff was not disabled where the ALJ "questioned the VE regarding the degree of vocational adjustment that would have to be made, in terms of tools, work processes, and work settings for the industry, from his past relevant work to" each identified job and the VE testified as to each); *Greenwood v. Chater*, No. CV 94-4718 CBM (JG), 1996 WL 945021, at \*8 (C.D. Cal. Mar. 29, 1996)

13

(unpublished report and recommendation) (reversing and remanding ALJ's finding Plaintiff was not disabled where the VE "never addressed in any substantive fashion whether, or to what extent, there would be changes in 'tools, work processes, work settings or industry'" given Plaintiff had worked in one field for twenty years), *adopted* CV 94-4718, Doc. 20 (D.C. Cal. Apr. 12, 1998) (unpublished order).

Fourth, neither the ALJ nor the VE drew any comparisons between plaintiff's past work and the identified other work, with the exception of discussing each position's SVP.  AR 69-70.  The VE testified the check cashier position had "a SVP of 3, which is the semi-skilled, just like [Plaintiff's] former position . . . ."  *Id.* at 70; *cf. Johnson*, No. CIV-04-1328-T, Doc. 21, at 8. "SVP," which stands for "Specific Vocational Preparation," identifies "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  DOT App. C § II, 1991 WL 688702 (4th rev. ed. 1991).  SVPs thus serve as an aid in classifying work, not as a specific measurement of what any one individual is capable of performing.

Fifth, the ALJ failed to even mention vocational adjustment in her decision, much less explicitly find little or no adjustment was required.

14

Furthermore, although the ALJ recounts in her decision the transferable skills identified by the VE (the skills to identify and record information), AR 28, 62, she does not specify which of the skills apply to the other jobs the VE identified. The ALJ is tasked with the duty to make such findings, not the VE. SSR 82-41, 1982 WL 31389, at *7 ("When the issue of skills and their transferability must be decided, the . . . ALJ is required to make certain findings of fact and include them in the written decision. Findings should be supported with appropriate documentation."); *Webster*, 187 F. App'x at 860-61 ("We have held that an ALJ must make findings specifically targeted at the level of vocational adjustment needed for [the claimant] to enter potential [identified] positions, as required by Social Security Ruling 82-41 . . . . That the record contains evidence that may support a specific factual finding cannot substitute for the finding itself.") (citing *Nielson v. Sullivan*, 992 F.2d 1118, 1121-22 (10th Cir. 1993)). The court may not make such a finding for the ALJ. *See, e.g.*, *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (A reviewing court is "not in a position to draw factual conclusions on behalf of the ALJ.") (citation omitted).

"Accordingly, the ALJ's decision here cannot be upheld" because she did not "appropriately put the burden on the Commissioner to establish not only that [Plaintiff] had skills that she could transfer to the [three] jobs identified,

but that the [three] jobs were so similar to her past work that she could be expected to perform them at a high degree of proficiency with minimal job orientation. Neither the record nor the ALJ's decision reflect that [s]he appropriately placed this more stringent burden on the Commissioner at step five." *Webster*, 187 F. App'x at 859-60. And, there is not substantial evidence in the record to support the Commissioner's decision that the jobs identified by the VE and relied on by the ALJ satisfy the vocational requirement established by the agency's regulations for a person of Plaintiff's advanced age.

## III. CONCLUSION

The court reverses the decision of the Commissioner and remands the case for further proceedings consistent with this Opinion and Order.

ENTERED this 15th day of December, 2016.

_____

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE